Martin, J.
delivered the opinion of the court. The plaintiff claims three thousand dollars for *699 the balance of a year’s salary, as mayor of the city of New-Orleans. He obtained judgment and the defendants appealed.
East’n. District.
May 1817.
The facts, disclosed by the record, are these:
The plaintiff having been elected mayor on the 5th of October 1812, took the oaths of office, and his salary was fixed at four thousand dollars a year. He addressed the city council, expressing his intention to deal with others, as liberally as he was dealt with—desiring that one half of his salary might be applied to the payment of the mayor’s clerk, and one thousand dollars of the balance to that of two additional commissaries of police, who were accordingly appointed.
On the 5th of October, 1814, he was re-elected: nothing was said as to the continuance of the allowance to the clerk and commissaries of police: but an ordinance was passed by the city council reducing the mayor’s salary to one thousand dollars a year. It did not acquire any apparent legal effect by the signature of the mayor or otherwise, but the allowances to the clerk and commissaries of police were continued.
On the 5th of April, 1815, the plaintiff received from the city treasurer five hundred dollars, which he expressed to be, for the two quarters salary, ending on that day.
*700 On the 5th of July, two hundred and fifty dollars were paid him, and he stated them to be for the quarter ending on that day.
On the 5th of September he received two hundred and fifty dollars, which he stated to be for the quarter, to end on the 5th of October, then following.
On or before that day he resigned his office.
The plaintiff’s counsel contends that the ordinance of the city council would not have been valid, even with the mayor’s signature—as the act of the general assembly, for the amendment of the act of incorporation of the city, forbids the reduction of the mayor’s salary during the period of service of the incumbent, 1812, 6, s. 7.—that the plaintiff had, to the salary of four thousand dollars, an undoubted right, which was not affected by the allowance, made by the city council to the mayor’s clerk or commissaries: which during the last year of his mayoralty, the period for which the balance of salary is claimed, was made without any authorisation on his part—that the proposition which he made, on that score, on his first election would not have been binding on any of their citizens elected in his place, and therefore cannot bind him on his re-election—that the one thousand dollars, which he received, can only reduce his salary pro tanto.
*701 The defendants’ counsel cannot insist on the validity of the ordinance: they would do it in vain, if it was cloathed with the mayor’s approbation—but they contend that although the salary of an incumbent mayor cannot be reduced, nothing compels him to receive the whole or even any part of it: nothing prevents him to give a receipt for it, even without receiving one single cent—or to release it—that the release may be express, by a positive act, or implied. resulting from any act evidencing his intention to abandon it, wholly or partially—that, in the present case, pars pro toto was received, as in the opinion of the counsel, clearly appears from the plaintiff’s receipts. Farther, that altho’ the plaintiff, on his re-election, was not bound to consent to the continuance of the allowances to the clerk of the mayor and to the two commissaries of police, out of his salary: yet his silence either evidences his consent or is a suppressio veri; a fraud on the defendants: since it induced them to continue two officers taken in the employ of the city, at the instance of the plaintiff, on his assurance that their services, tending principally to his ease and convenience, would occasion no expence to its coffers.
The plaintiff’s counsel reply that a receipt of *702 a part for the whole, being a donation, must be fully proved, and cannot be assumed on a mere presumption.
The court cannot assent to this last proposition. The maxim is nemo facile presumitur donare. “The abandonment, remise, of a debt,” says Pothier, “may be made by a tacit agreement, resulting from certain facts, which cause it to be presumed.” 2 Traité des obl. n. 572. He gives us an instance of such presumption, drawn from the law Procula.
Procula had received a large sum of money to be handed to her brother. After his death, she pleaded that he had abandoned the debt to her. There was no other evidence of the abandonment, except that which resulted from three circumstances, which Papinian held to suffice: consanguinitas, rationes sœpius putatœ, diuturnitas temporis consanguinity, accounts often settled and length of time.
This court, being of opinion that the defendants may shew, by presumptive evidence, that the plaintiff reduced his claim to the sum of one thousand dollars, which he received in discharge of his salary, the decision of the case now rests on the simple question of fact, viz. do the facts in the case sufficiently prove this sum of one thousand dollars, to be a pars pro toto, which (with the allowance of two thousand dollars, to *703 the clerk and commissaries) was by him received in full of his salary during the last year of his mayoralty? If this question be solved in the affirmative, the surplus was abandoned and the defendants may repel his claim thereto by the exception in the C. 2, s. 1, ff. de part. Videtur inter nos convenisse ne peteres. Then was the relation of debtors and creditor dissolved, and no alteration of the plaintiff’s mind can cause it to revive.
Taking the three circumstances, stated the law Procula, as affording a sufficient presumption of an abandonment—let us examine whether those relied upon by the defendants are less weighty.
I. Consanguinity. Here this circumstance (one of the parties being an artificial person) cannot exist. But a relation between them occurs, which the Roman law considered in this point of view, as equipollent to consanguinity. The Romans, says Pothier, considered pollicitation as obligatory, when made by a citizen to his city, when he had a just cause, puta in consideration of some municipal magistracy given him ob honorem, or when he had begun to put it into execution. L. 1, s. 1, & 2, ff. de Pollicit. Tr. des ob. n. 4.
*704 II. Accounts often settled. Thrice did the plaintiff make his demand on the coffers of the city expressly stating it, without any notice of what is now contended by the plaintiff’s counsel.
On the 5th of April, 1815, two quarters of the plaintiff's salary were due, amounting, according to the present calculation of his counsel, to two thousand dollars. If, as the opposite counsel suggest, the plaintiff had yielded his assent to the wishes of the city council (that he should receive his salary at the rate of $1000 a year,) conveyed in the ordinance which passed that boby, five hundred dollars only were due: this last sum did he receive, and his receipt states it to be for his salary during the six months ending on that day. Nothing was said, as to the one thousand five hundred dollars, which on that day were due him, if he meant not to yield his assent to the reduction. If his mind had not been made up on the subject, if he meant to retain the right of insisting on something more, would not the receipt have been on account of, or in payment of a part of my salary, &c.?
On the 5th of July, when, according to one hypothesis two thousand five hundred dollars were due him, and according to the other two hundred and fifty dollars only, the other sum is received and expressed to be for the mayor’s salary for the quarter ending on that day. The *705 two sums now received made that of seven hundred and fifty dollars. According to the plaintiff’s counsel, two hundred and fifty dollars were still due on the first quarter, receipts were in the treasury for the two first quarters and the plaintiff now signed a receipt for the third; while it is held that the fourth part of the first quarter’s salary and the whole of the second and third were yet due.
On the 5th of September, two hundred and fifty dollars were received by the plaintiff: this sum added to the two others made one thousand, the amount of the first quarter’s salary, reckoning as his counsel now does. Receipts, it has been observed; were signed for the first, second and third quarters. The last quarter had not become payable, yet the receipt purports that this sum of two hundred and fifty dollars is for the quarter, which is to end on the 5th of October following. This was avowedly a payment in anticipation, an indulgence which the plaintiff’s convenience required. Yet where was the need of it, if (as his counsel suggests it) the officer did not consider the preceding receipts, in full for his salary, as barring him from any claim on the part of the salary thus abandoned.
Is it common, does it generally happen that an officer who receives only one quarter of his sala *706 ry, gives receipts for the three first quarters of the year and for the last in advance? It is impossible to answer that question in the affirmative. The conclusion appears to us irresistible, that the last sum of $250, paid to the plaintiff in August, was not received in part payment of his salary during any of the preceding quarters: but that it was, as he expressed it, for the last quarter not yet expired, and in anticipation. The treasurer would have been startled at the proposition of making a payment, out of the course of business, in anticipation of the last quarter’s salary of an officer, not fully paid for the first, and who had already signed receipts for the first, second and third quarters, without receiving any thing for the second and third.
III. In the case cited out of the digest, length of time is presented as one of the circumstances, inducing the presumption of the abandonment of the debt. Diuturnitas temporis.
The statement of facts shews that soon after the last payment, the plaintiff resigned his office. His petition is the first evidence of any claim on his part, and bears date of the 13th of Nov. 1816, thirteen months after. This length of time does not perhaps satisfy the expression, diuturitas temporis of the digest, but there are other circumstances which did not occur in the case *707 cited, where no disposition to liberality appeared, except that resulting from consanguinity. In the one under consideration, the plaintiff, on his first coming to office, alive to the sense of gratitude which his promotion inspired, (and which the Roman law considered as so reasonable a ground for liberality, that it rendered a pollicitation arising from it obligatory) that he at once reduced his salary to one half. If the penury of public resources, or any other consideration, induced a belief in the council that its first magistrates would at their suggestion, reduce his expectations still more, and we find him doing, while in office, every thing, which consistently with his duty he could do, evidencing a disposition to concur in their wishes, from whence is a presumption to arise that his former liberality had yielded to the determination of concealing his designs under ambiguous expressions, in his receipts, in order to secure to himself the means, one year after his resignation, to draw out of the coffers of the city, a sum which he induced the council to believe it was his intention to leave there?
We think that the plaintiff’s determination to accept the $1000, he received during the last year of his mayoralty, instead of the 4000 dolls. to which he was entitled, is clearly to be presumed. It is useless to examine his right to the *708 2000 dollars paid to the clerk and commissaries of police.
Mazureau for the plaintiff, Moreau for the defendants.
It is, therefore, ordered adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and that there be judgment for the defendants, with costs of suit in both courts.